## United States District Court for the District of Columbia

| | |
|---|---|
| **Insurance Company of Greater New York personally, and as subrogee of 3636-Woodner Limited Partnership and the Woodner Company, Inc.** <br> 350 Fifth Avenue <br> New York, NY 10018 <br><br> Plaintiff, <br><br> v. <br><br> **Philadelphia Indemnity Insurance Company** <br> One Bala Plaza, Suite 100 <br> Bala Cynwyd, Pennsylvania, 19004 <br><br> **Serve on Resident Agent:** <br> CT Corporation Service <br> 1015 15th Street, NW <br> Suite 1000 <br> Washington, DC 20005 <br><br> Defendant | **Case No.:** |

## Complaint For Declaratory Judgment

Plaintiff, Insurance Company of Greater New York, personally and as subrogee of 3636-Woodner Limited Partnership, Rock Creek Plaza – Woodner Limited Partnership, and the Woodner Company, Inc (collectively "Greater New York"), brings this Complaint against Philadelphia Indemnity Insurance Company ("Philadelphia") as follows:

### Introduction

1. This litigation arises from a coverage dispute about defending and (if needed) indemnifying 3636-Woodner Limited Partnership, Rock Creek Plaza – Woodner Limited Partnership, and the Woodner Company, Inc. (collectively "the Woodner

Entities") in *Martinez v. 3636-Woodner Limited Partnership et al.*, Superior Court for the District of Columbia, Case No. 2024-CAB-007976.  Greater New York insured the Woodner Entities.  Philadelphia insured co-defendant Metropolitan Protective Services, Inc., a subcontractor who provided security services to the Woodner Entities for an apartment complex known as The Woodner Apartments. Metropolitan's contract with the Woodner Entities required Metropolitan to name the Woodner Entities as additional insureds on its policy for claims arising from Metropolitan's conduct.  Philadelphia's policy contained an "Additional Insured" endorsement adding any additional insured whom Metropolitan agreed to add as an additional insured pursuant to a written contract for any claims arising from Metropolitan's work on a primary and non-contributory basis.  But when Martinez sued the Woodner Entities and Metropolitan for claims arising from Metropolitan's allegedly negligent security services — the exact claims for which the Woodner Entities are additional insureds under Philadelphia's policy — Philadelphia refused to honor its contract.  This left Greater New York paying the Woodner Entities' defense costs and potential indemnity.  Greater New York, in its own right and in its right as subrogee of the Woodner Entities, therefore seeks a declaration that Philadelphia's policy provides primary and non-contributory coverage for the Woodner Entities and owes them a duty to defend and (depending on the outcome) a duty to indemnify the Woodner Entities against *Martinez v. 3636-Woodner Limited Partnership et al.*, Superior Court for the District of Columbia, Case No. 2024-CAB-007976.  It also seeks recoupment of defense

costs incurred to date, future defense costs, and the attorneys' fees for bringing this declaratory judgment action.

## Parties (and other related people)

2. Insurance Company of Greater New York is an insurance company whose principal place of business and legal domicile is 350 Fifth Avenue New York, NY 10018.  It is a citizen of New York.  Its NAIC number is 22195.

3. The Woodner Entities are not parties to these case because GNY asserts their rights via subrogation.  The Woodner Company, Inc is incorporated in Delaware and headquartered in New York.  They are citizens of Delaware and New York.  3636 Woodner Limited Partnership is a domestic limited partnership in the District of Columbia and headquartered in New York.  They are citizens of the District of Columbia and New York.  Rock Creek Plaza-Woodner, Limited Partnership is a domestic limited partnership in the District of Columbia and headquartered in New York.  They are citizens of New York and the District of Columbia.  They are not technically parties here.  Greater New York asserts their rights via subrogation.

4. Philadelphia Indemnity Insurance Company is an insurance company licensed to do business in the District of Columbia.  It is domiciled and headquartered in Pennsylvania at One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004 and therefore a citizen of Pennsylvania.  Its NAIC number is 18058.

5. Metropolitan Protective Services, Inc. is a citizen of Maryland.  It is a co-defendant in the underlying dispute, Philadelphia's named insured, and Woodner's

3

subcontractor in charge of providing security services.  It is not a party here because it has no distinct stake in the outcome of this dispute.

6.  Maria Martinez is the plaintiff in the underlying lawsuit, *Martinez v. 3636-Woodner Limited Partnership et al.*, Superior Court for the District of Columbia, Case No. 2024-CAB-007976.  She alleged that Metropolitan and Woodner are responsible for negligently failing to provide proper security.  She is not a party because plaintiffs are not necessary parties to declaratory judgment actions between an insured and its putative insurer.  *HRH Servs. LLC v. Travelers Indem. Co.*, Civil Action No. 23-cv-02300 (JDB), 2024 U.S. Dist. LEXIS 201856, at *16 (D.D.C. Nov. 6, 2024) (citing *Mount Hawley Insurance Company v. Sandy Lake Properties, Incorporated*, 425 F.3d 1308 (11th Cir. 2005).

7.  Christopher Cary is on information and belief a citizen of the District of Columbia.  He allegedly caused Ms. Martinez's harm by stabbing her as alleged in the underlying complaint.  He is a party to the underlying suit.  He is not a party here because he has no distinct stake in the outcome of this dispute.

## Jurisdiction and Venue

8.  This Court has personal jurisdiction over all parties pursuant to 28 U.S.C. § 1332 because the parties' citizenship is diverse and the amount in controversy, exclusive of interest and costs, is in excess of $75,000.

9.  Venue is proper in the District of Columbia because this action concerns an insurance policy that insured property in the District of Columbia and damages that occurred to property in the District of Columbia.

### Greater New York's Right to Proceed Via Subrogation

10. Subrogation is "the substitution of one person in the place of another with reference to a lawful claim, demand, or right so that the substituted party succeeds to the rights of the other." It exists as an equitable principle and does not require a contract. "Where one party has paid the debt of another, justice requires that the payor be able to recover his loss from the one who should have paid it, to prevent unjust enrichment." See *National Union Fire Ins. Co. v. Riggs Nat'l Bank*, 646 A.2d 966, 968 (D.C. 1994).

11. Greater New York therefore possesses the right of "equitable subrogation" to enforce its policyholder's rights against the parties that should have paid for the loss at issue here.

12. Greater New York also possesses the right of "conventional subrogation" —a specific contractual assignment of its policyholder's rights.

13. Greater New York's insurance policy insuring the Woodner Entities in this case contains the following provision transferring their policyholder's rights to recover for the loss to Erie:

> **8.    Transfer Of Rights Of Recovery Against Others To Us**
>
> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

See Form CG 00 01 (Ed. 4/13).

14. Greater New York has incurred at least $30,204.26 in defense costs defending the Woodner Entities in this case to date and anticipates future defense and indemnity costs could exceed $75,000.

**The Contractual Arrangement Between the Woodner Entities and Metropolitan**

15. On July 13, 2022, 3636 Woodner Limited Partnership and Rock Creek Plaza-Woodner, Limited Partnership entered a contract with Metropolitan to provide "unarmed security guard services" at the Woodner Apartments, 3636 16th Street NW, Washington, D.C. 20010.

16. As part of this contract, Metropolitan agreed to provide security for the apartment complex.  Its responsibilities included:

    1.1    Provide daily reporting by each assigned personnel, with documentation logging of any interaction with the tenants and visitors.

    1.2    Monitor all common and back-of-house areas, as outlined in Appendix A. At no point in time should the stationary security stations be left without security personnel. All breaks shall be covered by appropriate security personnel (i.e., rover officer). The officers shall be highly vigilant in actively patrolling while on duty.

    1.3    Security personnel shall continuously monitor the encompassing area, as well as perform walkthroughs of the underground parking garage, above-grade surface parking and the grounds/perimeter fencing surrounding the facility. Reference Appendix B.

    1.4    Immediately report suspicious activity to onsite OWNER management and contact the appropriate emergency personnel in situations where safety is compromised, or criminal activity is evident.

    1.5    Security personnel shall ensure that use of any reservable and/or permitted space is used appropriately, Security Personnel will alleviate and deter activity that is not conducive to appropriate use of the area.

1.6     Security personnel shall provide/share appropriate available resources to the community, including making appropriate referrals to individuals who may have questions concerning location of the property's amenities and available services.

1.7     Security officers shall be highly visible and identified as a professional security guards. Officers are required to wear a professional uniform and badge.

1.8     Use of cell phones shall only be for work related issues. Officers shall not focus on the internet during their shift.

1.9     Officers shall use two-way radios and cell phones to quickly relay information to OWNER's onsite staff. The Contractor supplies equipment.

1.10    Officers shall work to promote mutual trust and cooperation with OWNER Staff, tenants, and visitors.

1.11    Patrol area may be subject to change during construction activity associated with OWNER's renovation projects.

1.12    Contractor shall have at minimum, weekly meetings and/or conference calls with onsite OWNER management to discuss and evaluate if the needs of OWNER are being met, the types of activity they are seeing, trends that might be of concern, and provide an overall evaluation of the security guard services and make the necessary adjustments to the services provided.

See "The Woodner Request for Proposal — Unarmed Security Guard Services",

incorporated into the 3636 Woodner / Metropolitan Contract, at 2-3.

In addition, Metropolitan's performance requirements include:

6.1     General Duties and Responsibilities: Security officers shall maintain a constant and visible presence around and throughout the facility. Work performed shall consist of providing officers to perform security services as described herein:

• Routinely patrol the common and back-of house interior spaces including stairwells and elevators.

- Patrol perimeter including exterior access from 16th street, south-side access road, surface parking lot, underground parking garage, and facilities/grounds within the patrol perimeter outlined in Attachment B.

- Ensure building exteriors, structures, gates, and doors are always locked.

- Maintain two stationary checkpoints: (1) Front main lobby, ground level; (2) 5th floor side entrance.

- Perform inspection of security-related incidents, violations of regulations and matters of public safety and report same to appropriate authorities and OWNER.

- Contact appropriate personnel and police in case of unauthorized door openings or closings.

- Contact appropriate personnel and fire department in the event of fire and medical emergency.

- Only residents with proper access card keys are allowed into the building. Question and check ID of anyone who enters the premises during and after normal working hours and record said entry on daily report log.

- Be observant of behavior in common areas such as smoking and/or vaping in non-smoking areas and take appropriate action such activities are not permitted in the common interior spaces of the building.

- Investigate all credible reports of suspicious, illegal activity, vandalism, and conduct wellness checks as requested by OWNER and report all evidence to OWNER management immediately.

- Document all reports of suspicious, illegal activity and/or vandalism. Include the nature, precise location, and outcome of all incidents in addition to any other pertinent details.

- Communication shall be established with local law enforcement agencies to provide information on criminal activity taking place on site. This communication shall include immediate

communication required for emergency situations (i.e., gunfire, fights, domestic violence, excessive noise, tenant complaints) as well as communication required for subsequent investigations of criminal activity.

- Notify the appropriate law enforcement agency immediately of any unlawful activity or witnessing a potential problem

- Report inoperative interior/exterior lighting & doors; complete work order ticket for maintenance which describes location of the issue.

- Verify office doors are securely locked after business hours.

- Inspect all floors and stairwells preferably at unscheduled 4-hour intervals to ensure spaces are clear of vagrants; report signs of waste, garbage, trash, graffiti, any type of vandalism.

- Rover officer may be required to escort concerned tenants to their apartments.

- Officer including rovers should rotate duty locations to ensure personnel is familiar with all facets of the facility.

See "The Woodner Request for Proposal — Unarmed Security Guard Services", incorporated into the 3636 Woodner / Metropolitan Contract, at 4-5.

The rest of the terms appear in the 3636 Woodner / Metropolitan Contract.

17. Most importantly, Metropolitan contracted to add the Woodner Entities as Additional Insureds to their liability policy. The relevant provision requires Metropolitan to:

cause the following entities and all of their related and affiliated persons and entities… to be named as additional insureds and loss payees as their interests may appear for both ongoing operations and completed operations: … (ii) 3636 Woodner Limited Partnership and Rock Creek Plaza-Woodner Ltd Partnership (the "Owner"); … (iv) The Woodner Company.

9

3636 Woodner / Metropolitan Contract, Exhibit D (insurance requirements).

18. Metropolitan also agreed that the insurance it contracted to provide would:

> not be excess and provide, in the case of each prescribed coverage, that the policy of insurance shall be deemed primary and non-contributory to, and the insurer will not seek contribution from, any of the Additional Insureds' insurance and that the insurance of the Additional Insureds, if any, shall be excess over and above the insurance provided by the named insured, including by specific endorsement to: i) its primary liability policy and (ii) its umbrella/excess liability policy which shall cause the coverage afforded to the Additional Insureds thereunder to be first tier umbrella/excess coverage above the primary coverage afforded to them.

3636 Woodner / Metropolitan Contract, Exhibit D (insurance requirements).

**Philadelphia's Coverage Adds The Woodner Entities As Additional Insureds**

19. Philadelphia's policy insuring Metropolitan (Policy # PHPK2547163) provides a Commercial General Liability coverage for claims against insureds for bodily injury caused by occurrences, modified by forms and endorsements.

20. There is no genuine dispute that this policy provides coverage for the allegations in the complaint.  Philadelphia accepted Metropolitan's defense and is defending them in the underlying action.

21. Endorsement # PI-GL-005 (07/12) "ADDITIONAL INSURED — PRIMARY AND NON-CONTRIBUTORY INSURANCE" provides that as of May 5, 2023, its policy will extend additional insured status to "as per written contract."  In the industry custom, this means any entity Metropolitan agrees to make an additional insured gets to be an additional insured.

22. The endorsement further provides that Philadelphia will provide coverage for bodily injury "arising out of or relating to your negligence in the performance of "your work" for such person(s) or organization(s) that occurs on or after the effective date shown in the endorsement Schedule."

23. The endorsement further provides that the insurance will be "primary to and non-contributory with any other insurance maintained by the person or organization." It also "applies even if other valid and collectible insurance is available to the Additional Insured for a loss or "occurrence" we cover for this Additional Insured."

24. Nothing in this endorsement limits or remove coverage based on any alleged negligence by an additional insured.

25. Philadelphia's Commercial General Liability coverage also contains Form PI-GLD-SG (01/14), a "General Liability Deluxe Endorsement: Security Services" that further modifies the commercial general liability form, but "only in the event no other specific coverage for the subject matter of these extensions is provided under the policy."  This provision therefore applies only if Endorsement # PI-GL-005 (07/12) "ADDITIONAL INSURED — PRIMARY AND NON-CONTRIBUTORY INSURANCE" does not apply.

26. This endorsement modifies the definition of an insured under Philadelphia's coverage to include the following:

  f. Blanket Additional Insureds by Contract — Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing

in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:

(1)    Your acts or omissions; or

(2)    The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

Form PI-GLD-SG (01/14), 4.

27. Under either endorsement, the Woodner Entities became additional insureds for any claims arising out of related to Metropolitan's acts or omissions.  Nothing in either endorsement allows Philadelphia to refuse to accept its duty to defend or duty to indemnify because Philadelphia believes that the Woodner Entities are somehow negligent.

28. For purposes of the duty to defend, the Court and Philadelphia must accept Martinez's claims in *Martinez v. 3636-Woodner Limited Partnership et al.*, Superior Court for the District of Columbia, Case No. 2024-CAB-007976 as true.

29. Those claims, if true, allege that 3636-Woodner is liable to Martinez because of events that arise out of or relate to Metropolitan's negligent acts or omissions.

30. The Woodner Entities are therefore additional insureds under Philadelphia's policy and entitled to a duty to defend and (if necessary) a duty to indemnify on a primary and non-contributory basis.

### Greater New York is excess over Philadelphia

31. Greater New York, meanwhile, insures the Woodner Entities under a similar commercial general liability form, but is expressly excess over Philadelphia. Its policy language reads:

> **4.     Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> **a.     Primary Insurance**
>
> This insurance is primary except when Paragraph **b.** below applies.
>
> …
>
> **b. Excess Insurance**
>
> **(1)**     This insurance is excess over:
>
> **...**
>
> > **(b)**     Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.
>
> **(2)**     When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured s rights against all those other insurers.

Form CG 00 01 04 13, p.12.

32. Despite being excess, Greater New York is defending the Woodner Entities because of Philadelphia's failure to honor its policy.

**The Underlying Lawsuit**

33. According to the Amended Complaint in *Martinez v. 3636-Woodner Limited Partnership et al.*, Superior Court for the District of Columbia, Case No. 2024-CAB-007976, on February 29, 2024, Christopher Cary battered Maria Martinez by, among other things, stabbing her three times with a knife.  *Martinez v. 3636 Woodner* Amended Complaint) ¶ 6.

34. Martinez alleges that the Woodner Entities variously owned and managed the Woodner Apartments, which it calls the "the premises."  *Martinez v. 3636 Woodner* Amended Complaint, ¶ 2-3.

35. Martinez alleges that Metropolitan "acted as the agents, servants and/or employees" of the Woodner Entities "to organize and provide security services at the premises at issue, including the provision of building security officers at the premises at issue.  *Martinez v. 3636 Woodner* Amended Complaint, ¶ 4.

36. Martinez alleges that Cary, "at other times before the date of the incident, threatened the life of building security officers working at the premises at issue." *Martinez v. 3636 Woodner* Amended Complaint, ¶ 8.

37. Martinez alleges that the Woodner Entities and Metropolitan jointly and severally negligently failed to protect Martinez from Cary. *Martinez v. 3636 Woodner* Amended Complaint, Count 3, ¶¶ 12-14.

38. Count 3 alleges that the Woodner Entities and Metropolitan Protective Services owed a duty to:

> inter alia, reasonably ensure persons threatening harm to others did not obtain unrestricted access to the apartment building; reasonably ensure the safety of persons in the apartment building; reasonably ensure that persons in the apartment building were not subjected to physical force; and reasonably ensure that sufficient security personnel and procedures were in place to prevent foreseeable risks of harm and/or protect persons in the apartment building from foreseeable risks of harm.

*Martinez v. 3636 Woodner* Amended Complaint, ¶ 12.

39. The Woodner Entities and Metropolitan breached these duties by letting "allowing Plaintiff Maria Martinez to be subject to physical force, as set forth above." *Martinez v. 3636 Woodner* Amended Complaint, ¶ 13.

40. Martinez also alleged that the Woodner Entities and their alleged agent Metropolitan negligently failed to supervise their security guards, thereby causing the injuries. *Martinez v. 3636 Woodner* Amended Complaint, Count 4, ¶¶ 15-17.

41. Count 4 alleges a "Negligent Hiring, Training, & Supervision" claim. Martinez pleads that the Woodner Entities and Metropolitan owed:

> a continuing duty to reasonably, carefully and conscientiously secure the services of qualified and well-trained employees, agents, and/or servants, to reasonably hire, train, supervise and retain its employees, agents, and/or servants, and to promulgate and enforce rules and regulations to, inter alia, reasonably ensure its agents,

> servants and employees provide and maintain a safe environment
> for residents of the premises at issue.

*Martinez v. 3636 Woodner* Amended Complaint, ¶ 15.

42. As shown by Metropolitan's contract and as alleged in the underlying complaint, Metropolitan was responsible for all security for the entire complex as part of their contract with the Woodner Entities as described above.

43. Martinez seeks damages in excess of $5,000,000.  *Martinez v. 3636 Woodner* Amended Complaint, ad damnum clause.

**Greater New York Tendered The Defense To Philadelphia But Philadelphia Refused.**

44. When Greater New York learned of Philadelphia's obligations to the Woodner Entities, Greater New York timely tendered the claim to Philadelphia for a defense on February 26, 2025 and again on July 24, 2025.

45. Philadelphia did not bother to respond to the tender.

46. Instead of honoring its obligation to provide a defense on a primary and non-contributory basis, Philadelphia demanded that Greater New York contribute to a settlement because of alleged negligence by the Woodner Entities.

47. The Woodner Entities' negligence or non-negligence is irrelevant to Philadelphia's duty to defend.  Philadelphia's duty to defend instead depends on whether the complaint alleges claims "arising out of or relating to [Metropolitan's] negligence in the performance of "[Metropolitan's] work for such person(s) or organization(s)" added as additional insureds.  The complaint makes those

allegations and triggers the Woodner Entities' insured status and Philadelphia's duty to defend.

**Greater New York's Requested Declaratory Judgment**

48. Greater New York therefore seeks a declaratory judgment that Philadelphia owes the Woodner Entities a duty to defend and (if necessary) a duty to indemnify against the allegations in *Martinez v. 3636-Woodner Limited Partnership et al.*, Superior Court for the District of Columbia, Case No. 2024-CAB-007976 on a primary and non-contributory basis.

49. Philadelphia furthermore owes a duty to reimburse Greater New York for all defense costs incurred to date.  Those defense costs are currently at least $30,030 as of the time Greater New York drafted this complaint.

50. Greater New York furthermore seeks attorneys' fees for bringing this action to compel Philadelphia to honor its duty to defend.

**Count I — Declaratory Judgment**

51. Greater New York adopts and incorporates all prior paragraphs.

52. The Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. allows federal courts "in a case of actual controversy within its jurisdiction" to "declare the rights and other relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

53. An actual case or controversy exists between the parties as to whether Philadelphia owes a duty to defend and (if necessary) a duty to indemnify the Woodner Entities a duty to defend them against *Martinez v. 3636-Woodner Limited*

17

*Partnership et al.*, Superior Court for the District of Columbia, Case No. 2024-CAB-007976 on a primary and non-contributory basis.

54. Insurers analyzing the duty to defend must take the allegations in the complaint as true and examine whether any plausible claims encompassed within the complaint triggers coverage under their policy.

55. The allegations in *Martinez v. 3636-Woodner Limited Partnership et al.*, Superior Court for the District of Columbia, Case No. 2024-CAB-007976, if true, arise from and relate to Metropolitan's negligence.

56. The Woodner Entities are therefore additional insureds under that policy.

57. Philadelphia breached its obligation to the Woodner Entities by failing to defend and indemnify them on a primary and non-contributory basis as required by their contract.

58. Greater New York is defending the Woodner Entities and incurring defense costs rightfully born by Philadelphia.

59. Philadelphia furthermore owes a duty to indemnify the Woodner Entities against any judgment (if the Superior Court ultimately enters one) in *Martinez v. 3636-Woodner Limited Partnership et al.*, Superior Court for the District of Columbia, Case No. 2024-CAB-007976.

60. The anticipated cost of defense and potential subsequent indemnity in this matter exceed $75,000.

61. Greater New York therefore seeks a declaration that Philadelphia owes a duty to defend and a duty to indemnify the Woodner Entities in *Martinez v. 3636-Woodner*

18

*Limited Partnership et al.*, Superior Court for the District of Columbia, Case No. 2024-CAB-007976 on a primary and non-contributory basis.

62. Greater New York seeks to recover its attorneys' fees arising from this action because it seeks to enforce Philadelphia's duty to defend.

### Count II — Subrogation

63. Greater New York adopts and incorporates all prior paragraphs.

64.  Under District of Columbia law, even without any contract, "Where one party has paid the debt of another, justice requires that the payor be able to recover his loss from the one who should have paid it, to prevent unjust enrichment." *National Union Fire Ins. Co. v. Riggs Nat'l Bank*, 646 A.2d 966, 968 (D.C. 1994).

65. Greater New York's policy also gives Greater New York the right to assert any claims that its policyholder possessed to recover against anyone liable for the loss.

66. Here, Greater New York paid at least $30,204.26 in attorneys' fees and costs that Philadelphia should have paid and wrongfully refused to pay.

67. Greater New York therefore seeks to recover that $30,204.26 from Philadelphia via subrogation.

68. Greater New York seeks to recover its attorneys' fees arising from this action because it seeks to enforce Philadelphia's duty to defend.

### Ad Damnum Clause

WHEREFORE, Plaintiff, Insurance Company of Greater New York, requests that this Court:

a.   Declare the rights and obligations of the parties and enter a declaratory judgment for Insurance Company of Greater New York stating that Philadelphia owes a primary and non-contributory duty to defend and duty to indemnify Woodner Entities in *Martinez v. 3636-Woodner Limited Partnership et al.,* Superior Court for the District of Columbia, Case No. 2024-CAB-007976 on a primary and non-contributory basis.

b.   Enter a judgment for Insurance Company of Greater New York and against Philadelphia Indemnity Insurance Company for $30,204.26 in attorneys' fees and defense costs incurred thus far in defending the Woodner Entities, plus any future attorneys' fees, plus the attorneys' fees for pursuing this action, plus pre and post judgment interest and costs; and

c.   Grant Insurance Company of Greater New York such further relief as this Court deems appropriate.

*/s/ Yosef Kuperman*
Lisa M. Morgan, Esquire (#97894)
Yosef Kuperman, Esquire (#90002576)
The Law Offices of Frank F. Daily, P.A.
11350 McCormick Road
Executive Plaza III, Suite 704
Hunt Valley, MD 21031
(410) 584-9443; Fax: (410) 584-9619
lmorgan@frankdailylaw.com
ykuperman@frankdailylaw.com
*Attorney for Insurance Company of Greater New York personally, and as subrogee of 3636-Woodner Limited Partnership, Rock Creek Plaza – Woodner Limited Partnership, and the Woodner Company, Inc.*